**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CASE NO.  5:25-cr-00286** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE: POLSTER** |
| | ) | |
| **-vs-** | ) | |
| | ) | |
| **JERRICK DANIELS** | ) | **DEFENDANT JERRICK** |
| | ) | **DANIELS'S SENTENCING** |
| **Defendant.** | ) | **MEMORANDUM** |
| | ) | |

Defendant JERRICK DANIELS, through undersigned counsel, submits this Sentencing Memorandum for the Court's consideration and requests that the Court sentence Defendant in accordance with the terms of the parties' 11(c)(1)(C) plea agreement, which specifies a sentence of 180 months.  This agreed sentence as calculated and reviewed pursuant to Title 18, United States Code §§ 3553(a) and 3661, is sufficient but not greater than necessary to achieve the statutory goals of sentencing.

Respectfully submitted,

/S/ KRISTEN A. KOWALSKI
KRISTEN KOWALSKI (0079156)
1653 Merriman Rd., Suite 210
Akron, Ohio 44313
330-590-0519

**A. The applicable law affords discretion to the District Court Judge to impose a sentence not greater than necessary to satisfy the statutory purposes of sentencing.**

District Court Judges have discretion to impose sentences, but sentences should not be greater than necessary to satisfy the statutory purposes of sentencing. See Gall v. United States, 552 U.S. 38 (2007); Kimbrough v. United States, 552 U.S. 85 (2007); Rita v. United States, 551 U.S. 338 (2007); United States v. Booker, 543 U.S. 220 (2005). Both the Supreme Court and the sentencing statutes instruct District Court Judges to impose the *lowest* sentence that will meet the four purposes of sentencing: justice; deterrence; incapacitation; and rehabilitation. 18 U.S.C. § 3553(a)(2); Kimbrough, 552 U.S. at 101.

In fashioning an appropriate sentence, the District Court cannot presume that the Guideline range is reasonable but rather must also consider the factors enumerated in 18 USC 3553(a) to determine if an adjustment is warranted. United States v. Booker, 543 U.S. 220, 245- 46, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

The applicable guideline reads, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of the person convicted of an offense," this Court may "consider for the purposes of imposing an appropriate sentence." 18 U.S.C. § 3661. The Sixth Circuit has also spoken to the discretion of District Court judges in United States v. Webb, 403 F.3d 373, 381 (6th Cir. 2005), "[w]hile a district court must still give some consideration to the appropriate Guidelines range when making a sentencing determination, a court is no longer bound by the applicable Guidelines." The Sixth Circuit has affirmed sentences that include significant downward variances. The Sixth Circuit has acknowledged that District Court Judges have discretion in imposing sentences, including downward variances. The Court also acknowledged that the greater the variance in

sentencing, the more compelling the evidence supporting the variance need be. United States v. Grossman, 513 F.3d 592, 596 (6th Cir. 2008).

In imposing the sentence here, this Court must consider the factors set forth in 18 U.S.C. §3553(a): (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the advisory guidelines; (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. §3553(a).

B.  **Application of 18 U.S.C. §3553(a)'s Sentencing Factors**

   **History and Characteristics of Jerrick Daniels**

Mr. Jerrick Daniels is forty-five years old and is currently being held in the Northeast Ohio Correctional Center facility.  He has been in continuous federal custody in this matter since May 14, 2025.

 As detailed in the PSR, Jerrick's childhood involved significant tragedy and instability. Jerrick lost his mother, Sonya Daniels, at approximately age twelve and did not have relationship with his biological father until he was approximately twenty-four years old.  One constant that Jerrick has had in his life, however, is religion.  As a child, he attended church

3

with his grandmother in Alliance, Ohio. More recently, he has attended services with his mother-in-law at a church in Canton, Ohio.

Counsel has spoken with Mr. Daniel's daughter, G'Vonna Edwards. G'Vonna works as a sterile processing technician for a hospital.  She discloses that Mr. Daniels played a primary role in raising her until she was approximately twenty-one years old.  She stated she has a very good relationship with her father, and that he taught her how to care for herself and supported her in all the ways that both a mother and father should.  She informed counsel that he taught her how to drive, to have a good work ethic, and many other helpful and necessary life skills to navigate adulthood.  She knows him as a quiet and calm person who doesn't often get upset.

During G'Vonna's teenage years, Mr. Daniels made sure she had the things she needed. Notably, he also provided support to her when she was bullied in school. In addition to meeting her more basic needs, she recalls he also purchased the saxophone that she wanted, which she played in the school's marching band.

Regarding her father's property rehabilitation and rental business, she believes this was an area where he excelled. She saw the condition of the houses he purchased, which were often in a state of great disrepair, and how through his efforts they would soon be dramatically improved.  She informed counsel that at times he also utilized these homes to help others in need, providing them a place to stay, and helping them reach their goals.

G'Vonna also rented a unit in a duplex from her father for approximately five years, and states that her dad was a good landlord who would work with her on rent as needed due to the demands of her school but also encouraged her to be financially responsible as well.  She said that her dad had also helped her grandfather move out of a nursing home into one of his

4

properties (the unit above G'Vonna's), and assisted him in obtaining the things he needed, including a motorized chair.

G'Vonna has a child. She recalls that when she went to college, her father, along with his wife, took over significant care of her child which helped her succeed and upgrade her life. Then, when G'Vonna was in clinicals, her dad transported her child to and from school to help her meet all her responsibilities. G'Vonna informed counsel that Mr. Daniels is a wonderful grandfather to her child and has assisted her with teaching her child to talk and with potty training. She said that her dad has always been a "major support to her in anything that she chose to do that would better herself and her child."

Counsel has also spoken to Megan Daniels, Jerrick's wife, as well as her parents, Elaine and John Ramsey. All three describe Mr. Daniels as a very supportive, helpful and respectful man who cares about others, is good with children and is committed to his family.

Megan has known Jerrick since 2012.  The two were married in 2021, after Jerrick obtained the blessing of her parents. Mrs. Ramsey warmly recalls how thoughtfully he included her in many of the couple's wedding preparations.

During the course of Jerrick and Megan's relationship, Jerrick has taken on the role of father to Megan's child, who he has helped raise from a toddler, and cares for as his own. Megan has observed that Jerrick is an excellent father and grandfather, who readily attends the children's events, teaches them life skills and involves himself in their activities. Consequently, he and Megan's child have developed a strong familial bond.  When Megan went to nursing school for her L.P.N. certificate and then her R.N. license, Jerrick also supported her in many ways. In addition to assuming much of the care of her child, he also covered numerous other daily chores such as picking up laundry and paying bills.  Megan

5

was in school for her R.N. license when Jerrick's arrest interrupted her plans.  Megan is currently back in school and, in his absence, has gained a greater understanding of, and appreciation for, all that Jerrick had done to support and help her.

Megan described Jerrick as a highly family-oriented person and explained that he has also been helpful to many others in their combined family.  Of special note, she spoke of how he cares for his own father and her parents in various ways.  When it comes to family gatherings, which can be quite large, she informs that he is usually the cook, the host, or both.

Megan's parents have known Jerrick for approximately thirteen years. They have developed a positive relationship with him and have even taken vacations with him and their daughter. They describe him as a family man: a good dad, son, son-in-law, brother and cousin who always tries to help everyone. Mrs. Ramsey indicated that she loves Jerrick like a biological son and is impressed by how he has taken on the role of her grandchild's father. She noted that he also treats her daughter well and respects her.

Additionally, Jerrick has been instrumental in assisting Ramseys with home and car repairs. According to the Ramseys, he has helped them find the right assistance for whatever repair they have needed. He has also provided them the use one of his vehicles when they needed it.  Mr. Ramsey informed counsel that he has found Jerrick especially helpful to him in the winter months, when he has dug his car out of the snow.

Counsel also spoke to a long-time friend of Jerrick's, James Clark.  Mr. Clark has known Jerrick for over thirty years.  Mr. Clark considers Jerrick a close friend, who was supportive of him when he was going through a difficult time. He describes him as a "good guy," "a good person," and a "family person," who has always had a positive outlook.  He too

expressed that Jerrick is "good with kids," does his best to take care of others, and enjoys rehabilitating houses.

Regarding the current matter, Jerrick deeply regrets the decisions he made that have brought him in front of this Court. He has reflected on his conduct and the circumstances that prompted it, and in doing so, has gained significant insight about the thought processes that led him to the offenses in his case. While incarcerated in this matter, he has made productive use of his time by completing considerable programming. See Exhibit A.  Jerrick has previously accepted responsibility for his actions and appreciates how important it is going forward to maintain a law-abiding life for himself, for his family, and for the community at large.

**Conclusion**

For the foregoing reasons, Jerrick Daniels respectfully asks this Court to impose a 180-month sentence as outlined in his 11(c)(1)(C) plea agreement. Such a sentence would be "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. §3553(a).

Respectfully submitted,

*/S/ KRISTEN A. KOWALSKI*
KRISTEN KOWALSKI (0079156)
1653 Merriman Rd., Suite 210
Akron, Ohio 44313
330-590-0519
AttorneyKowalski@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 14, 2026, a copy of the foregoing Sentencing Memorandum was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

*/S/ KRISTEN A. KOWALSKI*
KRISTEN A. KOWALSKI